**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**XCHANGE TELECOM CORP.,**

              **Plaintiff,**                  **1:14-cv-54**
                                                         **(GLS/CFH)**

        **v.**

**SPRINT SPECTRUM L.P. et al.,**

              **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Herzog Law Firm<br>7 Southwoods Boulevard<br>Albany, NY 12211-3163 | KEITH J. ROLAND, ESQ. |
| XChange Telecom Corp.<br>3611 14th Avenue, Suite 215<br>Brooklyn, NY 11218 | MORDECHAI GROSS, ESQ. |
| **FOR THE DEFENDANTS:**<br>Steese, Evans Law Firm<br>6400 South Fiddlers Green Circle<br>Suite 1820<br>Denver, CO 80111 | CHARLES W. STEESE, ESQ. |
| Sheehan, Greene Law Firm<br>54 State Street, Suite 1001<br>Albany, NY 12207 | LAWRENCE H. SCHAEFER, ESQ.<br>THOMAS D. LATIN, ESQ. |
| Lathrop, Gage Law Firm<br>230 Park Avenue<br>Suite 1847<br>New York, NY 10169 | WILLIAM R. HANSEN, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff XChange Telecom Corp. commenced this action against defendants Sprint Spectrum L.P., Nextel of New York, Inc., Nextel Partners of Upstate New York, Inc., and Sprint Communications Company L.P., asserting various causes of action pursuant to the Federal Communications Act of 1934[1] ("the Act") and the New York Public Service Law to recover carrier access charges, as well as related common law contract claims. (*See generally* Compl., Dkt. No. 1.) Following joinder of issue, (Dkt. No. 6), defendants filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), seeking dismissal of some of XChange's causes of action, (Dkt. No. 8). For the reasons that follow, defendants' partial motion to dismiss is granted in its entirety.

## II. Background[2]

XChange, among other things, acts as a Competitive Local Exchange

---

[1] *See* 47 U.S.C. §§ 151-621.

[2] Unless otherwise noted, the facts are drawn from XChange's complaint and presented in the light most favorable to it.

Carrier (CLEC), providing local exchange telephone services in the New York City metropolitan area. (Compl. ¶ 1.) Defendants, all of whom are affiliated with Sprint, provide both cellular/wireless and landline telecommunications services within New York State; Sprint Spectrum, Nextel of New York, and Nextel Partners of Upstate New York (collectively "wireless defendants") provide cellular/wireless services to their customers, while Sprint Communications ("landline defendant") provides landline telecommunications services. (*Id.*) XChange alleges that it has billed both the wireless defendants and landline defendant for interstate and intrastate access charges, as well as reciprocal compensation charges, for terminating particular phone calls, which defendants have refused to pay, and XChange therefore seeks to collect those unpaid charges by way of this action. (*Id.* ¶¶ 9-12.) XChange alleges that it is owed roughly $700,000 in unpaid charges that have accrued since at least as far back as August 2012. (*Id.* ¶¶ 9-10, at 20.)

In its complaint, XChange asserts six causes of action, as follows: counts one and two seek reimbursement of access charges pursuant to federal and state tariffs, respectively, as well as pursuant to sections 206 and 207 of the Communications Act, (*id.* ¶¶ 33-42, 43-48); count three

alleges breach of contract, (*id.* ¶¶ 49-51); count four alleges a cause of action for account stated, or an implied-in-fact contract, due to defendants' failure to object to or dispute the bills sent by XChange, (*id.* ¶¶ 52-55); count six[3] alleges unjust and unreasonable practice, and undue discrimination, pursuant to sections 201 and 202 of the Communications Act and section 91 of the New York Public Service Law, (*id.* ¶¶ 56-62); and count seven alleges unjust enrichment, or an implied-at-law contract, (*id.* ¶¶ 63-66).[4]

## III. <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.[5] For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. <u>Discussion</u>

---

[3] The court notes that there is no "count five" alleged in the complaint. For purposes of this Memorandum-Decision and Order, the court will refer to XChange's causes of action as they are indicated in the complaint.

[4] Defendants only seek partial dismissal of count three, and seek to dismiss counts one, six, and seven in their entirety. (Dkt. No. 8 at 1; Dkt. No. 8, Attach. 1 at 1.) Counts two and four therefore survive the instant partial motion to dismiss.

[5] "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted).

For purposes of this motion, a brief discussion of the basic context in which these claims arise, as set forth in XChange's complaint, is helpful. Generally, when telephone calls are made between customers or users, the originating user's local exchange carrier delivers the call to an interexchange carrier (IXC). (Compl. ¶ 25.) The IXC "then transports the call from the originating city to the terminating city," where the call is again transferred from the IXC to the local exchange carrier of the call recipient. (*Id.*)

When these calls are exchanged between carriers along the way, the local exchange carriers that originate and/or terminate the call may charge the IXC with a "carrier access charge." (*Id.* ¶¶ 3-8, 25.) In the case of local landline calls, where one local exchange carrier delivers a call to another local exchange carrier, "the originating carrier pays the receiving carrier a fee, known as reciprocal compensation, to terminate the call." (*Id.* ¶ 26.) The amount of the charge depends on whether the call is local or toll,[6] travels via a wireless or a landline network, and is made interstate or

---

[6] Wireless "toll" calls are those that "originate and terminate in different [major trading areas]." (Compl. ¶¶ 3-4.)

intrastate. (*Id.* ¶ 2.) While interstate access charges are "set forth in tariffs filed with the [Federal Communications Commission (]FCC[),] . . . [i]ntrastate access charges are set forth in tariffs filed with state public service commissions." (*Id.* ¶ 6.) Both interstate and intrastate access charges are at issue in this action; XChange alleges that Sprint has unjustly and unlawfully refused to pay charges that accrued when XChange terminated calls that were transferred to it by defendants.[7] (*Id.* ¶¶ 10-11.)

With that background in mind, the court now turns to each of defendants' arguments below.

## A.  Counts One and Three

Defendants first argue that counts one and three should be dismissed to the extent that they are premised on XChange billing defendants for interstate access charges during the period before XChange had filed its interstate tariff with the FCC. (Dkt. No. 8, Attach. 1 at 4-8.) In response, XChange argues that it is not precluded from seeking payment for interstate access charges prior to the filing of its federal tariff because it "had posted on its website the rates, terms and conditions applicable to

---

[7] The only type of call for which such charges are not at issue here is local wireless calls; "this is because under the FCC rules, local traffic between a[n exchange carrier] and wireless provider is exchanged on a 'bill and keep' basis," meaning the carriers do not charge each other for call termination services. (Compl. ¶¶ 3, 10.)

6

termination of interstate toll traffic." (Dkt. No. 19 at 3-15.) This, XChange argues, gives it the authority to seek the unpaid fees. (*Id.*) For the reasons that follow, the court agrees with defendants, and dismisses XChange's causes of action pursuant to the tariffs and/or for breach of contract to the extent they seek payment of interstate access charges before XChange had filed its federal tariff.

Section 203(a) of the Communications Act requires common carriers to "file with the [FCC] . . . schedules showing all charges for itself and its connecting carriers for interstate . . . wire or radio communication." 47 U.S.C. § 203(a). The Act further provides that "[n]o carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter." *Id.* § 203(c). With respect to CLECs, such as XChange here, in order to comply with this requirement, the FCC allows them to assess interstate access charges "either by filing tariffs with the [FCC] or by negotiating contracts with the affected IXCs," such as defendants here. *In re Sprint Commc'ns Co. v. N. Valley Commc'ns, LLC*, 26 F.C.C.R. 10780, 10782 (2011). In other words, "until a CLEC files valid interstate tariffs under Section 203 of the Act or

7

enters into contracts with IXCs for the access services it intends to provide, it lacks authority to bill for those services." *In re AT&T Corp. v. All Am. Tel. Co.*, 28 F.C.C.R. 3477, 3494 (2013); *see Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, No. 3:10-CV-1897-D, 2012 WL 2995063, at *2 (N.D. Tex. July 23, 2012) ("If a CLEC does not have a filed tariff or a contract with the relevant IXC, it cannot collect switched access charges. . . . A CLEC therefore violates [the Act] by charging an IXC switched access charges that are not billed pursuant to a filed tariff or a negotiated contract, because such charges are unjust and unreasonable.").

Here, XChange admits that it did "not have negotiated agreements with [defendants] governing carrier access charges or local terminations," (Compl. ¶ 32), nor did it "have a federal access charge tariff on file with the FCC and effective prior to December 1, 2012," (Dkt. No. 19 at 3; Dkt. No. 25, Attach. 1). XChange argues, however, that posting its rates applicable to termination of interstate toll traffic on its website suffices to give it authority to bill for these services. (Dkt. No. 19 at 3-15.) Although XChange engages in a lengthy discussion of the filed rate doctrine[8] and its

---

[8] The filed rate doctrine's application to this action is more fully discussed below. *See infra* Part IV.C.

alleged inapplicability to the instant case, it cites no authority for the premise that posting rates on one's website is an adequate substitute for the clear mandates of both the Communications Act and the FCC that a carrier may only charge for interstate access fees if it has first filed a tariff or negotiated a contract with the affected interexchange carrier. *See* 47 U.S.C. § 203(a); *In re AT&T Corp.*, 28 F.C.C.R. at 3494. As XChange acknowledges that it did neither of those things here, it may not maintain a cause of action pursuant to its federal tariff for a time period before the tariff was filed and effective. *See, e.g., Connect Insured*, 2012 WL 2995063, at *5 (dismissing claim for interstate charges where plaintiff had neither an interstate tariff on file with the FCC nor a negotiated contract with the defendant carrier); *Fax Telecommunicaciones v. AT & T*, 952 F. Supp. 946, 954 (E.D.N.Y. 1996) (noting the "'utterly central'" role that the rate filing provisions play in the administration of the Communications Act, and declining to enforce a contract for an unfiled tariff (quoting *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 229-31 (1994)), *aff'd sub nom. Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479 (2d Cir. 1998). Counts one and three are therefore dismissed to the extent they seek interstate access charges before XChange had a filed, effective interstate

tariff.

**B.     Counts One and Six**

Although, as described above, count one is dismissed to the extent it seeks interstate access charges prior to the filing of XChange's interstate tariff with the FCC, defendants alternatively seek dismissal of count one in its entirety, as well as count six, arguing that XChange's statutory claims pursuant to the Communications Act and the New York Public Service Law are not cognizable under the circumstances of this case.  (Dkt. No. 8, Attach. 1 at 12-15.)  In response, XChange appears to concede that it cannot maintain an action pursuant to the Communications Act for unpaid charges, but asserts that, "while the FCC may not accept a complaint from one carrier seeking payment from another carrier, the New York [Public Service Commission] contemplates such complaints," and that, because it has an "established . . . process for resolving intercarrier disputes," this action is proper under N.Y. Public Service Law § 91.  (Dkt. No. 19 at 21-22.)  As discussed below, the court agrees with defendants.

As relevant here, section 201 of the Act requires that "[a]ll charges, practices, classifications, and regulations for and in connection with . . . communication service, shall be just and reasonable."  47 U.S.C. § 201(b).

The parallel provision of the New York Public Service Law is found in section 91, which provides that "[a]ll charges made or demanded by any . . . telephone corporation for any service rendered . . . shall be just and reasonable." N.Y. Pub. Serv. Law § 91(1). Both federal and state law also prohibit discriminatory practices by telephone carriers in the provision of such communications services. *See* 47 U.S.C. § 202(a) ("It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service."); N.Y. Pub. Serv. Law § 91(3) ("No . . . telephone corporation shall make or give any undue or unreasonable preference or advantage . . . or subject any particular . . . corporation . . . to any undue or unreasonable prejudice.")

Generally speaking, the Act is intended to regulate the conduct of carriers in providing services to customers, and prohibit them from discriminating in the rates that they charge; it does not, however, govern a customer's obligations to a carrier. *See MCI Telecomms. Corp. v. FCC*, 59 F.3d 1407, 1418 (D.C. Cir. 1995) (noting that the Act does not establish jurisdiction over determinations of a carrier's rights against a customer or subscriber), *cert. denied*, 517 U.S. 1129 (1996); *All Am. Tel. Co. v. AT&T*

11

*Corp.*, 26 F.C.C.R. 723, 726-27 (2011) (stating that, while it "may give rise to a claim in court for breach of tariff/contract," "an allegation by a carrier that a customer has failed to pay charges specified in the carrier's tariff fails to state a claim for violation of any provision of the Act . . . even if the carrier's customer is another carrier"). In other words, "*a failure to pay tariffed access charges does not constitute a violation of the Act*[, and, a]ccordingly, . . . CLECs have no claim in a court or at the Commission that [another carrier] violated the Act in its role as a customer." *All Am. Tel. Co.*, 26 F.C.C.R. at 728.

XChange acknowledges that "the FCC may not accept a complaint from one carrier seeking payment from another carrier," and offers almost no argument on this point, only asserting in conclusory fashion that it "has set forth a valid claim that [defendants] ha[ve] engaged in unjust and unreasonable discrimination prohibited by Section 202(a) of the . . . Act and Section 91(3) of the Public Service Law." (Dkt. No. 19 at 21-22.) However, with respect to its claims pursuant to the Act, it is clear that the failure of a customer to pay access charges is not a scenario that is governed by, or subject to, the Act. *See All Am. Tel. Co.*, 26 F.C.C.R. at 726-28. With respect to its parallel claim pursuant to state law, XChange asserts that the

12

Public Service Commission "has established a process for resolving intercarrier disputes, including claims and counterclaims under tariffs and interconnection agreements," but does not explain how this establishes that its claim for damages for unpaid access charges is cognizable in this court pursuant to the Public Service Law. (Dkt. No. 19 at 21.) Given the nearly identical nature of the relevant provisions of the Public Service Law as compared to the corresponding provisions in the Communications Act, which XChange acknowledges do not apply here, this court is satisfied that the posture of the claims here—those of a carrier against a customer for unpaid access charges—takes them outside the purview of the Act and the Public Service Law provisions governing carrier charges and conduct. *See In re Best Payphones, Inc.*, No. 01-15472, 2007 WL 3240453, at *2-3 (Bankr. S.D.N.Y. Oct. 25, 2007) (expressing doubt that N.Y. Pub. Serv. Law § 91(3) applies where the "claim does not allege that [a carrier] provided discriminatory service or charged discriminatory rates"). Accordingly, XChange's counts one and six, which are premised on violations of the Act and the Public Service Law, are dismissed.

**C.** **Count Seven**

Defendants lastly seek to dismiss count seven on the basis that the

filed rate doctrine bars XChange's equitable claim for unjust enrichment or quasi contract. (Dkt. No. 8, Attach. 1 at 8-12.) In opposition, XChange argues that it is not barred from asserting an unjust enrichment claim, at least with respect to the period for which no federal tariff was on file, or prior to December 1, 2012. (Dkt. No. 19 at 3-15.) The court again agrees with defendants, and dismisses XChange's equitable unjust enrichment claim in its entirety.

As discussed above, the Communications Act specifically requires every common carrier to file "schedules," or tariffs, with the FCC "showing all charges," 47 U.S.C. § 203(a),[9] and "makes it unlawful for a carrier to . . . 'employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.'" *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 221-22 (1998) (quoting 47 U.S.C. § 203(c)). The "filed rate doctrine," then, "'forbids a regulated entity [from] charg[ing] rates for its services other than those properly filed with the

---

[9] Section 203(a) provides, in relevant part: "Every common carrier . . . shall . . . file with the [FCC] and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication between the different points on its own system . . . . Such schedules shall contain such other information, and be printed in such form, and be posted and kept open for public inspection in such places, as the [FCC] may by regulation require."

appropriate federal regulatory authority.'"[10] *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998) (quoting *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)).

In other words, "[u]nder the filed-rate doctrine, federal law preempts claims concerning the price at which service is to be offered, and . . . claims concerning the services that are offered." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 711 (5th Cir. 1999) (citing *Am. Tel. & Tel. Co.*, 524 U.S. at 220-26); *see Iowa Network Servs., Inc. v. Qwest Corp.*, 466 F.3d 1091, 1097 (8th Cir. 2006) ("Under [the filed rate] doctrine, once a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be the law and to therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer." (internal quotation marks and citation omitted)). Accordingly, where an applicable tariff is in place, a carrier is precluded from bringing an equitable cause of action to recover for services covered by the tariff. *See, e.g., Access Telecom*, 197 F.3d at 710-11; *MCI WorldCom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, No. Civ.A.04-1479, 2005 WL 2145499, at *5

---

[10] New York recognizes a similar doctrine with respect to tariffs filed under the Public Service Law. *See Lauer v. New York Tel. Co.*, 231 A.D.2d 126, 129 (3d Dep't 1997).

(E.D. Va. Aug. 31, 2005) (citing *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002)) (granting summary judgment on quantum meruit and unjust enrichment claims because filed rate doctrine precluded "any claim that would allow Paetec to charge MCI outside the tariff"), *aff'd* 204 F. App'x 271 (4th Cir. 2006); *Freedom Ring Commc'ns, LLC v. AT & T Corp.*, 229 F. Supp. 2d 67, 69-70 (D.N.H. 2002) (dismissing unjust enrichment claim for unpaid charges "because a filed tariff is 'the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff,'" and therefore "it necessarily displaces any state law basis for adjudicating those terms and conditions" (quoting *Am. Tel. & Tel. Co.*, 524 U.S. at 230)).

With respect to services for which the tariffing requirement of section 203(a) of the Act applies, even when a tariff is not yet in place, caselaw indicates that the filed rate doctrine operates to bar a carrier from asserting equitable claims, such as claims for unjust enrichment, in an attempt to recover assessed charges. Because carriers are obligated under the Communications Act and FCC interpretations to either submit schedules setting forth the applicable rates for interstate access charges, *see* 47 U.S.C. § 203(a), (c), or negotiate such rates directly with other carriers, *see*

*In re Sprint Commc'ns Co.*, 26 F.C.C.R. at 10782, courts have held that they cannot avoid these requirements by instead asserting equitable claims for unpaid charges. *See, e.g., Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1197 (10th Cir. 2007) (affirming the district court's dismissal of unjust enrichment claims, even where a tariff was not yet in place, because federal law imposed requirements on carriers in order to assess charges, and "allowing [the plaintiff] to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism," making it "inappropriate to imply a contract in equity considering that under federal law [the plaintiff] had an obligation to contract directly with [the defendant] but chose not to do so"); *Connect Insured*, 2012 WL 2995063, at *12 ("Federal law required Connect to file a tariff or negotiate a contract with Qwest in order to charge Qwest for telecommunications services. Because Connect did not file an interstate tariff or negotiate a contract with Qwest, Connect cannot charge Qwest for interstate services. Connect cannot circumvent this prohibition by relying on equitable theories of recovery." (citation omitted)); *Sancom, Inc. v. Qwest Commc'ns Corp.*, 643 F. Supp. 2d 1117, 1126 (D.S.D. 2009) (dismissing unjust enrichment claim for "originating and terminating access

17

services that were not covered by [a] filed tariff[ ]").

Here, defendants argue that XChange's unjust enrichment claim should be dismissed because it had state tariffs in place for the duration of the relevant period, (Compl. ¶ 44; Dkt. No. 25, Attachs. 3-6), as well as a filed, effective federal tariff as of December 1, 2012, (Compl. ¶ 34; Dkt. No. 25, Attachs. 1-2). The filed rate doctrine therefore bars XChange from maintaining an unjust enrichment claim with respect to the same services for which it had tariffs on file. *See Brown*, 277 F.3d at 1170 . As for the interstate access charges during the period before it had a federal tariff on file with the FCC, XChange argues that it should be permitted to maintain its unjust enrichment claim. (Dkt. No. 19 at 3-17.) However, as indicated above, the filed rate doctrine bars this claim as well. *See Union Tel. Co.*, 495 F.3d at 1197; *Connect Insured*, 2012 WL 2995063, at *12. XChange's count seven for unjust enrichment is therefore dismissed.[11]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[11] Although the result reached here may appear harsh, the court notes the Supreme Court's admonishment that "[d]espite the harsh effects of the filed rate doctrine, we have consistently adhered to it." *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128 (1990); *see Am. Tel. & Tel. Co.*, 524 U.S. at 223 ("While the filed rate doctrine may seem harsh in some circumstances, its strict application is necessary." (internal citation omitted)).

**ORDERED** that defendants' partial motion to dismiss (Dkt. No. 8) is **GRANTED** in its entirety; and it is further

**ORDERED** that counts one, six, and seven of XChange's complaint (Compl. ¶¶ 33-42, 56-62, 63-66) are **DISMISSED IN THEIR ENTIRETY** and count three (*id.* ¶¶ 49-51) is **DISMISSED IN PART** only insofar as it seeks damages for unpaid interstate access charges prior to December 1, 2012; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Christian F. Hummel to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2014
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court