UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

XCHANGE TELECOM CORP.,

                Plaintiff,

  -against-

SPRINT SPECTRUM L.P.; NEXTEL OF NEW YORK, INC., NEXTEL PARTNERS OF UPSTATE NEW YORK, INC.; AND SPRINT COMMUNICATIONS COMPANY L.P.,

                Defendants.

Case No. 1:14-CV-0054 (GLS/CFH)

**DEFENDANTS' RESPONSE TO XCHANGE TELECOM'S MOTION
(ECF 69) FOR PARTIAL STAY**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | RELEVANT FACTUAL AND REGULATORY BACKGROUND | 1 |
| II. | ARGUMENT | 3 |
| | A. The Standard for Staying the Case Pending Resolution of Issues Elsewhere. | 3 |
| | B. XChange's Request Does Not Meet the Standard: a Stay Would Not Conserve Resources, Avoid Inconsistent Rulings or Avoid Unfair Prejudice. | 5 |
| |     1. A Stay Is Unnecessary: the Court Need Not Rule on the IntraMTA Issue Before the MDL Ruling. | 5 |
| |     2. Neither the LEC's Petition for a Declaratory Ruling from the FCC Nor the Primary Jurisdiction Doctrine Warrant a Stay in this Action. | 8 |
| |     3. Sprint's Request to Stay the NY PSC Action of Other LECs Involves Materially Different Circumstances. | 11 |
| III. | CONCLUSION | 12 |

Sprint Communications Company L.P. ("Sprint Communications"), Sprint Spectrum L.P. ("Sprint Spectrum"), Nextel of New York, Inc. ("Nextel NY"), and Nextel Partners of Upstate New York, Inc. ("Nextel Partners") (collectively "Sprint") respond to XChange Telecom Corp. ("XChange")'s Motion for a Partial Stay of Proceedings related to the intraMTA aspect of the case. The Court should deny XChange's motion as premature. XChange admits it does not seek a stay of discovery relating to damage calculations associated with intraMTA calling (Doc. 69-1 Memo. at 8), and does not seek an adjudication of the remaining issues in the case in isolation (*Id*.), but then inexplicably seeks a stay of one part of the lawsuit. XChange bases its request on an incorrect assumption that "Sprint wants this Court to decide the intraMTA legal issue while the rest of the telecommunications industry is litigating that very point before the MDL panel and the FCC." Memo. at 13. Sprint does not presently ask the Court to decide the intraMTA issue. Sprint expects the MDL Panel to render a decision on this issue later this year. In the interim – as XChange readily acknowledges – discovery on all aspects of the case should take place. Given that substantive motions are not due until March 4, 2016, there is plenty of time to let the MDL court act before considering a motion to stay. Sprint respectfully requests that the Court deny XChange's motion as premature.

I.      **RELEVANT FACTUAL AND REGULATORY BACKGROUND**

XChange's basic recitation of the dispute is correct: XChange initiated this lawsuit in January 2014 because Sprint was disputing charges on its "access invoices." When a long distance toll call is made, it is usually originated on facilities owned by one local exchange carrier ("LEC"), handed off to a long distance carrier ("interexchange carrier" or "IXC"), and terminated on facilities owned by another LEC. To the extent the call meets the originating LEC tariff requirements, the IXC pays the originating LEC originating switched access charges. Likewise, if the call meets the terminating LEC tariff requirements, the IXC pays the terminating

LEC terminating switched access charges. Sprint disputed charges contained in XChange's bills because it believed most calls terminated by XChange did not satisfy XChange's interstate or intrastate tariff requirements.[1]

XChange sued claiming that Sprint was obligated to pay XChange the billed access charges on every call. Sprint answered and counterclaimed explaining that access charges do not apply to XChange's calls for three reasons. The Court already agreed with Sprint as to the first reason. On September 16, 2014, the Court issued an Order granting Sprint's motion to dismiss because XChange could not bill Sprint without a filed interstate tariff. In its Order, the Court relied on Section 203 of the Communications Act (47 U.S.C. § 203), and several of the FCC's "traffic pumping" (i.e., "access stimulation") decisions. *See, e.g.,* Doc. 30 at 7-8 (citing *In re Sprint Commc'ns Co. v. N. Valley Commc'ns, LLC*, 26 F.C.C.R. 10780, 10782 (2011), and *In re AT&T Corp. v. All Am. Tel. Co.*, 28 F.C.C.R. 3477, 3494 (2013)).

Sprint's two additional reasons for why access charges do not apply to XChange's calls remain at issue. First, a significant percentage of the calls are local wireless (*i.e.,* "intraMTA") calls; access charges do not apply to these calls. Doc. 1 ¶¶ 3, 30 (Complaint); Doc. 6 (Sprint's Counterclaims) ¶¶ 15-26. Second, approximately 90% of the calls are not delivered to an end user customer, as required by XChange's tariffs and thus are part of a "traffic pumping" scheme. Doc. 6 ¶¶ 27-30.[2] A significant percentage of XChange's calls are not compensable because

---

[1] Virtually all calls related to XChange are terminated. Very few are originated – a hallmark of a LEC involved in traffic pumping. *See, e.g., In re Connect Am. Fund,* 26 F.C.C.R. 17663 ¶ 675 (2011).

[2] While unnecessary to decide this Motion, XChange completely misapprehends the FCC's traffic pumping decisions. It claims Sprint's position is that all calls destined for a conference bridge are non-compensable. Memo at 4, n.2. This is incorrect. Calls that do not meet tariff requirements are not-compensable. The FCC has made this point on numerous occasions. *See, e.g., Qwest Commc'ns Corp. v. Farmers & Merchs. Mut. Tel. Co.,* 24 F.C.C.R. 14801 ¶¶ 10, 23 (2009) ("*Farmers II*"), *aff'd sub nom*, *Farmers & Merchs. Mut. Tel. of Wayland v. FCC,* 668 F.3d 714 (D.C. Cir. 2011); *AT&T Corp. v. YMax Commc'ns Corp.*, 26 F.C.C.R. 5742 ¶ 12 (2011) (in a case involving a CLEC, "[c]onsistent with these

they are both intraMTA and involved in traffic pumping. Thus, resolving one aspect of the case does not resolve the damages issue.

XChange asks the Court to refrain from deciding the intraMTA issue because it is scheduled for decision in a pending Multidistrict Litigation (MDL). *In re: IntraMTA Switched Access Charges Litig.*, No. MDL 2587 (N.D. Tex.) (the "MDL Court"). Sprint notified the Court and XChange of the MDL case on January 9, 2015 – seven months ago. ECF 56. Sprint agrees that this Court should let the MDL Court issue its decision on the pending motions to dismiss; however, that decision is expected this year – certainly before substantive motions in this case are due on March 4, 2016. There is no need to stay any aspect of this case.

**II.     ARGUMENT**

    **A.     The Standard for Staying the Case Pending Resolution of Issues Elsewhere.**

Requests to stay are in the Court's discretion.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *accord Clinton v. Jones,* 520 U.S. 681, 706–08, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). * * * How this can best be

---

statutory provisions [of Sections 203(a) and 203(c)], a carrier may lawfully assess tariffed charges only for those services specifically described in its applicable tariff."). The FCC has made equally clear that all calls must be originated by or terminated to an "end user" customer for access charges to apply. *See, e.g., Qwest Commc'ns Co., LLC v. N. Valley Commc'ns, LLC,* 26 F.C.C.R. 8332 ¶¶ 9-11 (2011), *aff'd, N. Valley Commc'ns, LLC v. FCC,* 717 F.3d 1017 (D.C. Cir. 2013) (citing 47 U.S.C. § 153(53); 47 C.F.R. §§ 61.26, 69.2(m)). XChange's claim (Memo. at 4-5) that current FCC rules allow it to bill access charges simply because rates are at a particular level is also not the law:

> [R]elying upon snippets from and mischaracterizations of the *USF/ICC Transformation Order*, Defendants argue that carriers who act unjustly and unreasonably in violation of the Act and Commission rules may do so with impunity as long as they benchmark their access rates to the competing incumbent local exchange carrier. Nothing in the *USF/ICC Transformation Order* supports this contention. Indeed, the Commission's prior decisions demonstrate the exact opposite to be the case.

*In re AT&T Corp. v. All Am. Tel. Co.,* 29 F.C.C.R. 6393 ¶¶ 16-17 (2014). This conclusion is confirmed by the fact that after *Connect America*, the FCC has continued to issue decisions finding traffic pumping schemes illegal. *See, e.g.*, *Qwest Commc'ns Corp. v. Sancom, Inc.,* 28 F.C.C.R. 1982 (Enf. Bur. 2013); *AT&T v. All Am. Tel. Co.,* 28 F.C.C.R. 3477 (2013), *recon. den'd,* 29 F.C.C.R. 6393 (2014).

3

>done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Landis*, 299 U.S. at 254–55, 57 S. Ct. 163.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 96 (2d Cir. 2012). "A request for a stay is an appeal to equity." *Ofosu v. McElroy,* 98 F.3d 694, 699 (2d Cir. 1996). "The person seeking a stay 'bears the burden of establishing its need.' " *Louis Vuitton,* 676 F.3d at 97 (quoting *Clinton,* 520 U.S. at 708).

Courts have identified several factors to consider when assessing whether to stay all or part of a proceeding. For example, this Court recently articulated the following five factors on a defendant's motion to stay:

>(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Nuccio v. Duve*, No. 7:13-CV-1556 MAD/TWD, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) (quoting *Finn v. Barney,* No. 08–CV–2975, 2008 WL 5215699, *2 (S.D.N.Y. Dec. 8, 2008)). The multi-factor tests for motions to stay

>however, no matter how carefully refined, can do no more than act as a rough guide for the district court as it exercises its discretion. They are not mechanical devices for churning out correct results in overlapping civil and federal proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court.

*Louis Vuitton,* 676 F.3d at 99. XChange cites cases regarding motions to stay pending a decision of whether cases will be consolidated in an MDL case. Memo. at 11 (citing *Pierre v. Prospect Mortgage LLC,* Civ. 13-453 (NAM/RFT), 2013 WL 5876151, at *2 (N.D.N.Y. Oct. 31, 2013) and cases therein). *Pierre* uses largely the same set of factors for a stay as this Court in *Nuccio*, but the circumstances differ. Unlike in its cited cases, XChange is not proposing to transfer any

4

part of this case to the MDL Court to proceed with discovery or dispositive rulings. It instead asks for an indefinite stay of dispositive rulings on the intraMTA issue. In short, XChange's motion requires the Court to use its discretion to weigh whether XChange has shown that a stay is warranted for judicial economy or the avoidance of unfair prejudice.

      **B.**    **XChange's Request Does Not Meet the Standard: a Stay Would Not Conserve Resources, Avoid Inconsistent Rulings or Avoid Unfair Prejudice.**

XChange asks the Court to stay dispositive rulings on the intraMTA portion of the case, but to allow discovery regarding (*i*) all aspects of the traffic pumping portion of the case, and (*ii*) the volume and damages aspects of the intraMTA case. Memo. at 8. *This is tantamount to stating that the only aspect of the case that XChange wants stayed is a substantive ruling on the intraMTA issue. At this time, there is no threat that this will occur.* The Court should therefore reject the request for a partial stay for many reasons.

      *1.    A Stay Is Unnecessary: the Court Need Not Rule on the IntraMTA Issue Before the MDL Ruling.*

The requested stay will not aid judicial economy or avoid any prejudice: there are no pending motions before the Court that would require a ruling on the intraMTA issues, and therefore XChange's motion is premature. It is an abuse of discretion to stay a case when the present record does not establish a need for the stay.

> The decision to postpone the trial was, furthermore, premature. The proponent of a stay bears the burden of establishing its need. ... In this case, at the stage at which the District Court made its ruling, there was no way to assess whether a stay of trial after the completion of discovery would be warranted.

*Clinton*, 520 U.S. at 708.

Just as in *Clinton*, here dispositive motions are not due until March 2016. The "MDL Court, in [an] effort to reach as decision as soon as possible, stated that '[t]he court will attempt to schedule oral argument promptly after the last Rule 12 reply brief is filed.' The court also

5

stated verbally that it plans to issue a ruling by the end of the summer." **Exhibit A** at 10 (Sprint's Motion to Stay the PSC Action). At this point, the issues in the MDL Court are fully briefed, oral argument is set for September 18, 2015 and a decision is expected shortly thereafter.

The MDL case is before Chief Judge Sidney A. Fitzwater, who has had no difficulty promptly deciding issues based on FCC decisions. *See, e.g., Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.,* Civ. 10-1897-D, 2012 WL 2995063, at *2, 5 (N.D. Tex. July 23, 2012).[3] The summary judgment briefing in that case was completed on April 3, 2012 (Civ. 10-1897-D, Doc. 158), and Judge Fitzwater ruled less than four months later. There is every reason to believe that Judge Fitzwater will rule on the MDL issue quickly as well, and certainly before the March 4, 2016 substantive motion deadline.

Even if the MDL ruling is delayed beyond the dispositive motion deadline, the Court would not need to stay the case; it could just extend the remaining schedule and give the parties more time to complete discovery.[4] This validates there is no need for a stay. This case can proceed on the current schedule without the need to address the intraMTA issue on the merits for seven months.

>   2.  *XChange's Comments About the Complexity of the IntraMTA Issue are Overstated.*

XChange also argues that the Court should stay decision on the intraMTA issue because it is so "complicated" that XChange lacks the legal expertise and resources to address it. Memo. at 8. Despite this statement, XChange incongruously claims it is "far more likely" that Sprint

---

[3] Coincidently, in granting Sprint's motion to dismiss in this case, the Court relied on Judge Fitzwater's decision in *Connect Insured*. Doc. 30 at 8-9 (citing *Connect Insured* with approval).

[4] It is possible that Sprint may need to seek an extension of the schedule regardless. Sprint has subpoenaed two of the companies that generated large volumes of traffic to XChange, and the subpoenaed entities have both informed Sprint that they need additional time to produce the requested documents.

6

will lose the issue before the MDL Court. *Id*. at 10. When the FCC's rules and supporting case law are evaluated, it is clear that the intraMTA legal issue is neither complicated nor likely to be decided in favor of the LECs in the MDL Court.[5]

The exact intraMTA issue in this case – whether access charges apply to intraMTA calls carried by an intermediate carrier – has already been decided by FCC rules and multiple circuit courts. In 1996, the FCC issued rules making plain that access charges do not apply to intraMTA calls. *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, CC Docket No. 96-98, 11 F.C.C.R. 15499 ¶ 1034 (1996), (First Report and Order), *subsequent history omitted;* 47 C.F.R. § 51.701(b)(2) (as amended); 47 C.F.R. § 51.703(b). Numerous federal courts interpreted those rules and held that intermediary carriers – like Sprint in this case – are exempt from access charges when they help to deliver intraMTA calls. *Iowa Network Servs. v. Qwest Corp.*, 466 F.3d 1091, 1096-97 (8th Cir. 2006); *Rural Iowa Indep. Tel. Ass'n v. Iowa Utils. Bd.*, 476 F.3d 572, 573-74 (8th Cir. 2007); *Alma Commc'ns Co. v. Mo. Pub. Serv. Comm'n,* 490 F.3d 619, 619 (8th Cir. 2007); *Atlas Tel. Co. v. Okla. Corp. Comm'n,* 400 F.3d 1256, 1264-65 (10th Cir. 2005). In 2011, the FCC evaluated the issue a second time, affirmed the intraMTA rules, and cited to these circuit decisions with approval. *In re Connect Am. Fund*, 26 F.C.C.R. 17663 ¶¶ 1004, 1007 (2011), *aff'd, In re FCC 11-161,* 753 F.3d 1015, 1152-53 (10th Cir. 2014), *other subsequent history omitted.* After

---

[5] XChange also asserts that the MDL Court's ruling will be "binding" in this case. Memo. at 7. The order will certainly provide significant guidance to the Court, but preclusive effect cannot be evaluated until the ruling issues. *See, e.g., Bergman v. Spruce Peak Realty, LLC*, No. 2:11-CV-127, 2012 WL 6212849, at *8 (D. Vt. Dec. 13, 2012) ("mere speculation" that arbitrator's award would have preclusive effect did not justify stay of issues); *cf., Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc.*, 567 F. Supp. 537, 543 (E.D.N.Y. 1982) (must know the grounds of a prior verdict to determine its preclusive effect). XChange is asking the Court to prejudge the MDL ruling. XChange also argues that what it believes is a high likelihood of appeal from the MDL Court justifies not waiting before entering a stay. Once again, XChange is prejudging an issue. Until the MDL Court rules, it is impossible to know whether that order will be appealed.

*Connect America*, the Ninth Circuit issued a decision making the same point. *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970 (9th Cir. 2012), *cert. den'd*, 133 S. Ct. 758 (2012). Between the FCC's rules and the case law, there is nothing controversial about the law on the intraMTA issue.

The fact that LECs have moved to dismiss Sprint's claims in the MDL Court does not demonstrate that their arguments have merit. The LECs have an enormous financial incentive to make the intraMTA cases progress as slowly as possible. Collectively, the LECs involved in the FCC petition owe Sprint and Verizon hundreds of millions of dollars. XChange itself recognizes that the intraMTA issue involves very significant alleged damages. Memo. at 10 ("huge financial impact").

> 2. *Neither the LEC's Petition for a Declaratory Ruling from the FCC Nor the Primary Jurisdiction Doctrine Warrant a Stay in this Action.*

XChange also argues for a stay because after Sprint and Verizon brought their respective intraMTA actions, several defendants petitioned the FCC for a declaratory ruling regarding the applicability of the intraMTA rule when an IXC acts as intermediary in the call flow. Memo. at 14-15. The LECs' petition does not warrant a stay here. XChange attempts to claim that the primary jurisdiction doctrine mandates that the Court wait for the FCC to issue a decision. That argument is simply wrong. Indeed, the primary jurisdiction doctrine has no application here.

> An agency's specialized expertise may come into play as to whether a case raises "issues of fact not within the conventional experience of judges," but within the purview of an agency's responsibilities; whether the "limited functions of review by the judiciary are more rationally exercised, by preliminary resort" to an agency "better equipped than courts" *to resolve an issue in the first instance*; or, in a word, whether preliminary reference of issues to the agency will promote that proper working relationship between court and agency that the primary jurisdiction doctrine seeks to facilitate.

*N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257, 262 (N.D.N.Y. 2010) (citations omitted, emphasis added, quoting *Ellis v. Tribune Television Co.,* 443 F.3d 71, 82 (2d

8

Cir. 2006)) (hereafter, "*Level 3*"). XChange quotes the same passage from *Level 3* but ignores most of the court's most applicable reasoning applicable to the circumstances of this case.

> "[T]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.,* 46 F.3d 220, 222 (2d Cir. 1995).
>
> The primary jurisdiction doctrine is not as sweeping as it may project, but rather has a "relatively narrow scope." *Goya Foods, Inc. v. Tropicana Prods. Inc.,* 846 F.2d 848, 851 (2d Cir. 1988). The courts "ordinarily do not defer when the issue involved is purely a legal question, one not involving agency expertise or experience," *Gen. Elec. Co. v. MV Nedlloyd,* 817 F.2d 1022, 1026 (2d Cir. 1987) (citations omitted), nor do they have to find a need to "secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit," *Global Crossing Bandwith, Inc. v. OLS, Inc.,* 2009 WL 763483, at *7 (citations omitted).

*Level 3*, 734 F. Supp. 2d at 262-63.

In *Level 3*, the defendant pointed to a petition for declaratory ruling that it had filed with the FCC in July 2009 regarding the same subject at issue in that case. Given the "litany of other reported cases in which the courts—not an agency—determined the … issues related to the telecommunications industry," the primary jurisdiction doctrine did not apply and the Court denied the requested stay. *Level 3,* 734 F. Supp. 2d at 267. As in *Level 3*, so too here there is a litany of court cases that decide the intraMTA issue. *Supra* at 7. Accordingly,

> [t]here is no cogent reason to await the FCC's decision regarding if it has jurisdiction, which decision has been longtime coming, nor to wait longer, should it conclude it has jurisdiction, in order for it to render findings on the Petition. Such a delay would surely derail the benefit of discovery in this litigation and the expedited disposition of the case. Courts should resist the temptation of passing the issue off to another entity for the sake of judicial economy and should hold fast to its "unflagging obligation ... to exercise the jurisdiction given [it]." ... No matter the development of the record, the issue of a breach of contract will ultimately be decided by this Court.

*Id.* at 268 (quoting *Tassy v. Brunswick Hosp. Center, Inc.,* 296 F.3d 65, 73 (2d Cir. 2002)).[6]

---

[6] XChange also cites *Flanigan's Furniture v. New York Tel. Co.*, 1987 WL 20302 (N.D.N.Y. 1987), for

9

Moreover, the LECs' petition does not, in and of itself, mean there is actually anything for the FCC to decide or clarify. When the FCC has already resolved an issue, the doctrine does not apply because there no issue for the FCC to resolve "in the first instance." *Level 3,* 734 F. Supp. 2 at 262. *See, e.g., ITT World Commc'ns Inc. v. W. Union Tel. Co.*, 524 F. Supp. 702, 706-07 (S.D.N.Y. 1981); *N.Y. Access Billing, LLC v. ATX Commc'ns, Inc.*, 289 F. Supp. 2d 260, 268 (N.D.N.Y. 2003) ("The FCC has already determined which tariffs apply to interstate carrier service, it is not, however, necessary for the FCC to determine whether the defendants have failed to pay for such service."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (affirming district court's denial of motion to stay or dismiss because the FDA had already made "considered judgments" on the issues).

The FCC is also not required to rule on the declaratory petition. "The Commission has broad discretion whether to issue a declaratory ruling." *In re Protecting & Promoting the Open Internet*, 30 F.C.C. Rcd. 5601 ¶ 542 (2015) (citing *Yale Broadcasting Co. v. FCC*, 478 F.2d 594, 602 (D.C. Cir. 1973); 5 U.S.C. § 554(e); 47 C.F.R. § 1.2(a)). "[T]he Commission is not *required* to issue such a declaratory statement merely because a broadcaster asks for one. * * * An administrative agency should not be compelled to issue a clarifying statement unless its failure to do so can be shown to be a clear abuse of discretion." *Yale Broadcasting*, 478 F.2d at 602 (emphasis original; notes omitted). The FCC frequently declines to rule on such petitions. *See, e.g., Id.*; *Open Internet,* 30 F.C.C.R. ¶ 542. There is also no time limit on such proceedings. *contrast,* 47 U.S.C. § 208(b) (five month limitation on certain complaints). The FCC has been known to allow petitions and even remand orders to remain pending for years. *See, e.g., Connect*

---

primary jurisdiction, but the opinion contains only the court's analysis of whether to stay or dismiss the case, not the analysis that supported a referral in the first place. The case does not support XChange's request for a stay.

*America,* 26 F.C.C.R. 17663 ¶ 698, n. 1181 (declining to rule on petition that was filed two and a half years earlier); *In re Core Commc'ns, Inc.*, 531 F.3d 849, 861 (D.C. Cir. 2008) (the FCC had not acted on remand order for six years); *Radio-Television News Directors Ass'n v. FCC*, 229 F.3d 269, 271-72 (D.C. Cir. 2000) (petition remained pending for 20 years).

Again, the LECs have significant financial incentive to tie up the intraMTA issue for years. Petitioning the FCC to "clarify" what the FCC and several appellate courts have already decided is one way to attempt slowing the progress of the court cases against the LECs. The declaratory ruling proceeding does not warrant a stay in this action. Because the FCC and several appellate courts have already answered the question regarding the intraMTA rule with intermediary IXCs, the Court need not stay the case to await any further guidance from the FCC.

> 3. *Sprint's Request to Stay the NY PSC Action of Other LECs Involves Materially Different Circumstances.*

As in its pre-motion letter, XChange again focuses on the fact that Sprint asked the New York Public Service Commission ("PSC") to stay a decision on the intraMTA issue (in a case brought by *Ontario*, another local exchange carrier) to allow the MDL Court to address the issue. The circumstances in that case differ materially from this case: Sprint asked the PSC to stay *the entire case* because it did not make sense to address the calling at issue piecemeal. Given that the calls in the NY PSC case were not subject to access charges for many reasons, deciding one issue would not address whether the call is or is not compensable. Sprint asked the PSC action to be stayed because (a) that case was filed *after* the MDL was created, (b) by a party that was already a party in the MDL case, and (c) because if the ruling from the MDL Court is in Sprint's favor, it would moot the remainder of the PSC case. Once the intraMTA issue is decided, the remaining amount in dispute is so small that settlement should be a virtual certainty, and judicial resources can be saved altogether. *See Exhibit A* at 14. Here, resolution of the intraMTA issue

11

will not resolve the case; the parties will still need discovery. As a result, a stay here makes no sense as XChange tacitly acknowledges because it wants discovery to continue. Because the circumstances are so different, Sprint's motion to stay the *Ontario* case before the New York PSC does not support XChange's request to stay this case.

### III. CONCLUSION

For each of the reasons stated above, the Court should deny XChange's request for a stay.

Dated: August 31, 2015.

Respectfully submitted,

Lawrence H. Schaefer
Thomas D. Latin
Lippes Mathias Wexler and Friedman
54 State Street, Suite 1001
Albany, NY 12207
Telephone: (518) 462-0110
lschaefer@lippes.com
tlatin@lippes.com

By: *s/Charles W. Steese*
Charles W. Steese *(pro hac vice)*
Colorado Attorney No. 26924; Arizona Attorney No. 012901; Iowa Attorney No. AT0011278
Sandra L. Potter *(pro hac vice)*
Colorado Attorney No. 29811
Attorneys for Defendants
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Facsimile: (720) 200-0679
csteese@armstrongteasdale.com
spotter@armstrongteasdale.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| **Keith J. Roland** | **Mordechai Gross** |
| Herzog Law Firm | XChange Telecom Corp. |
| 7 Southwoods Boulevard | 3611 14th Avenue, Suite 215 |
| Albany, NY 12211-3163 | Brooklyn, NY 11218 |
| Email: kroland@herzoglaw.com | Email: mgross@xchangetele.com |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

Respectfully submitted,

By: *s/Charles W. Steese*