UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

XCHANGE TELECOM CORP.,  )
 )
       Plaintiff,  )
 )
-against-  )
 )
SPRINT SPECTRUM L.P.; NEXTEL OF NEW  ) Case No. 1:14-CV-0054(GLS/CFH)
YORK, INC.; NEXTEL PARTNERS OF  )
UPSTATE NEW YORK, INC.; and SPRINT  )
COMMUNICATIONS COMPANY L.P.,  )
 )
       Defendants.  )
 )

---

**PLAINTIFF XCHANGE TELECOM CORP.'S REPLY
IN SUPPORT OF MOTION FOR PARTIAL STAY**

            Keith J. Roland
            Bar Role No. 601256
            Herzog Law Firm P.C.
            7 Southwoods Boulevard
            Albany, New York 12211
            Tel: (518) 465-7581 Extension 185
            Fax: (518) 462-2743
            e-mail: kroland@herzoglaw.com

            Mordy Gross, Esq.
            Bar Role No. 517828
            XChange Telecom Corp.
            3611 14th Avenue, Suite 215
            Brooklyn, New York 11218
            e-mail: mgross@xchangetele.com

            Attorneys for XChange Telecom Corp.

Dated: Albany, New York
    September 3, 2015

I.  **PRELIMINARY STATEMENT**

In its motion for a partial stay of this proceeding, XChange demonstrated that the parties' liability to each other would, in a significant manner, be determined by interpretation of the FCC's "Intra-MTA" rule. This particular legal issue is in the process of being resolved in two forums: the MDL Court for the Northern District of Texas, and before the FCC itself.

Following its usual harangue about "call pumping", Sprint's response to the motion did not dispute that both the MDL Court and the FCC have the intra-MTA rule pending before them.[1] Nor did Sprint dispute that the great bulk of the nationwide telecommunications industry is engaged in litigating the intra-MTA issue before both the MDL Court and the FCC. Nonetheless, Sprint insists that this Court, on its own, should forthwith proceed to decide the intra-MTA issue as if the MDL Court had not been convened, and as if the FCC were not already reviewing this very issue.

Sprint's argument is based on its claim the intra-MTA legal issue is straightforward, has already been decided, and could not possibly be resolved in any manner other than the way Sprint argues the rule should be construed. Without going into great detail, that is simply not the

---

[1] Sprint opens with its expected *ad hominem* diatribe accusing XChange of engaging in "call pumping" which, when stripped of Sprint's pejorative terms, simply means that certain XChange customers hosted services such as conference calling services or community information programs. In this regard, XChange has acted no differently than hundreds of local exchange carriers throughout the United States, including Sprint itself, which in the past have hosted conference bridging or information service platforms. Moreover, as discussed in XChange's November 3, 2014 Memorandum in Opposition to Sprint's Motion to Compel Discovery Responses (at pp. 11-12), the FCC has found nothing wrong with a local exchange carrier providing telephone service to customers with large volumes of incoming traffic, and in fact has issued regulations specifically authorizing the imposition of access charges on such calls, provided the rates charged do not exceed the rates of the large incumbent carriers such as Verizon. See 47 CFR §61.26(g)(i). Additionally, contrary to Sprint's assertion, it is not true "virtually all calls to XChange are terminated", which Sprint asserts is the hallmark of "call pumping". Sprint Response, fn 1, p. 2. XChange serves approximately 25,000 customers and 45,000 access lines (Affidavit of Alfred West, November 3, 2014, ¶7). It is a full fledged local exchange carrier with large volumes of both incoming and outgoing traffic.

case, as shown by the detailed legal analysis disproving Sprint's arguments set forth in the Defendant LEC's Joint Rule 12(b)(6) Motion to Dismiss now pending in the MDL Court (Exhibit A to XChange motion).

## II.     ARGUMENT

A.     <u>A Partial Stay is Appropriate</u>

Sprint argues there is no need for a partial stay, because it claims the MDL Court will have the intra-MTA issue resolved "by the end of the summer". That is highly unlikely.

First, the MDL Court may decide – as suggested by the local exchange carrier defendants in the MDL case – to refer interpretation of the FCC's rule to the FCC itself. The request for that relief is contained in Point VI (beginning at page 48) in the LEC's Joint Rule 12(b)(6) Motion to Dismiss (Ex. A to XChange Motion). But even if the MDL Court chooses to interpret the rule itself – rather than deferring to the FCC, the author of the rule – the decision will have such monumental consequences on the entire telecommunications industry that the decision – whatever it is – is likely to be appealed. That would put the parties in this case in a very difficult position in having to file their dispositive motions regarding the intra-MTA issue in March of next year as this Court's schedule now requires.

Sprint cites the criteria set forth in <u>Nuccio v. Duve</u> used by this Court to determine whether a stay is appropriate, and agrees that is largely the same set of factors cited by XChange as set forth <u>Pierre v. Prospect Mortgage</u>. However, Sprint argues there is a difference, because XChange is not proposing to transfer any part of this case to the MDL Court. But Sprint does not explain why there is – or should be – any difference in application of the Court's five criteria for considering a stay.

Sprint sums up its argument as follows:

3

"In short, XChange's motion requires the Court to use its discretion to weigh whether XChange has shown that a stay is warranted for judicial economy or the avoidance of unfair prejudice."

Sprint Memo, page 5. That is, in fact, the exact point made by XChange: Because of the pendency of the intra-MTA legal issue in the MDL Court, and before the FCC, a stay of deciding that legal issue "is warranted for judicial economy or the avoidance of unfair prejudice." And it is particularly warranted to avoid conflicting or inconsistent decision between the District Courts reviewing the same issue.

B.   The Primary Jurisdiction Doctrine is Applicable

Sprint also argues the primary jurisdiction doctrine has no application in this case. It claims that XChange cited New York State Thruway Authority v. Level 3 Communications, 734 F.Supp.2d 257 (NDNY 2010), but ignored the Court's reasoning "applicable to the circumstances of this case." That is not true.[2]

XChange did note in its Memorandum (page 15) that New York State Thruway Authority held that not all cases involving telecommunications should be referred to the FCC, including those where the issues involved were "within the conventional experience of judges". Contrary to Sprint's latest argument, that situation is not applicable here.

New York State Thruway Authority was a breach of contract suit, and included issues such as whether the contract between the parties was unconscionable. Level 3 (the defendant) had argued that fees imposed by the Thruway Authority for rights of way and associated "regeneration" facilities were "unreasonable and inconsistent with the terms of the [contractual

---

[2] XChange has not asked this Court for a referral to the FCC, since the intra-MTA issue is already pending there. The issue may wind up at the FCC for a second time should the MDL Court make a referral. XChange's specific request is that this Court defer ruling on the intra-MTA issue until the MDL Court rules, or until the FCC rules on the petition already pending or on a referral from the MDL Court.

4

agreements]". Judge Treece summarized the Level 3 petition as arguing that the fees are "unreasonable, discriminatory, divorced from prevailing market rates, and should be pre-empted under Section 253 [of the Telecommunications Act]". 734 F.Supp.2d 257 at 260. In opposition to Level 3's effort to refer the contractual issue to the FCC, the Thruway Authority argued (1) Congress did not delegate to the FCC "the particular responsibility in matters of this ilk ..."; (2) the arms-length negotiated contract "does not involve any technicality nor entail policy considerations" and (3) courts throughout the country "have displayed the indispensable competence and expertise to resolve contractual disputes of this nature".

Judge Treece rejected Level 3's motion to have the FCC resolve the case, concluding that the FCC "does not have special competence in this arena, and this matter does fall squarely within the conventional experience of judges." The Court went on to conclude that "contract disputes are legal questions within the conventional competence of the courts and thus the doctrine of primary jurisdiction does not normally apply." 734 F.Supp. 257 at 265.

The case now before this Court is wholly different from <u>New York State Thruway Authority</u>. It is not primarily a "contract case" involving a private contract between two parties. Instead, this case indisputably involves a matter specifically assigned by Congress to the FCC to determine: the compensation which connecting telecommunications carriers should pay to each other when originating and terminating calls.[3] Moreover, the legal issue here is the specific interpretation and application of the FCC's own rule – the meaning of which is best determined by the agency which created and issued the rule.

---

[3] See §251 of the Federal Communications Act, which imposes duties on telecommunications carriers, including the duty under §251(b)(6) of payment of "reciprocal compensation" to other carriers. §251(d)(1) specifically charges the FCC to establish regulations to implement the terms of §251.

As shown by the contrast between Sprint's arguments, and those of the local exchange carriers (set forth in their MDL motion to dismiss), this is not a simple, easy and straightforward issue of interpretation of an FCC rule to be undertaken by this Court. It involves weighing extraordinary complexities as to the nature of traffic flows between carriers, and the impact that interpretation of the FCC rule will have on the hundreds of millions of dollars of revenues which flow back and forth between telecommunications carriers. In New York State Thruway Authority, the terms to be interpreted included classic contract concepts such as "reasonable, fair, neutral and discriminatory" (734 F.Supp.2d 257 at 265), which are within the ordinary experience of courts. Not so the meaning of a complex FCC rule. This case is a classic example of when the doctrine of primary jurisdiction applies.

C.  Sprint Cannot Justify its About Face

Sprint attempts to deflect this Court's attention from the position it took in a pending proceeding before the New York PSC, where Sprint argued the PSC should stay the case pending resolution of the intra-MTA issue by the MDL Court. Sprint argues there is a difference between that case and this one, on the ground that it sought to stay the entire PSC case, not just a portion of it, and that since "the calls in the NYPSC case were not subject to access charges for many reasons, deciding one issue would not address whether the call is or is not compensable." (Sprint Response at page 11). But, in fact, at the very beginning of its Response to this Court, Sprint argues that "a significant percentage of XChange's calls are not compensable because they are both intra-MTA and involved in traffic pumping" (emphasis added). (Sprint Response, pp. 2-3). Thus, in Sprint's own words, the calls here are not subject to access charges for multiple reasons, and are thus comparable to the calls in the PSC case, which Sprint says should be stayed, because those calls "were not subject to access charges for many reasons" (emphasis added).

6

### III. CONCLUSION

Sprint has failed to set forth any cogent basis for this Court grappling with, and deciding, the intra-MTA legal issue while the same issue is already pending before the MDL Court and the FCC.

For the reasons stated herein, and in XChange's Memorandum in Support of Motion, this Court should issue a stay on resolving the intra-MTA legal issue in this proceeding.

Respectfully submitted,

*/s/ Keith J. Roland*

Keith J. Roland (Bar Role No. 601256)
Herzog Law Firm P.C.
7 Southwoods Boulevard
Albany, New York 12211
Tel: (518) 465-7581 Extension 185
Fax: (518) 462-2743
e-mail: kroland@herzoglaw.com

Mordy Gross, Esq. (Bar Role No. 517828)
XChange Telecom Corp.
3611 14th Avenue, Suite 215
Brooklyn, New York 11218
e-mail: mgross@xchangetele.com

Attorneys for XChange Telecom Corp.

Dated: Albany, New York
       September 3, 2015