**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

XCHANGE TELECOM CORP.,

                Plaintiff,

      v.                                      No. 1:14-CV-54
                                                  (GLS/CFH)

SPRINT SPECTRUM L.P.; NEXTEL
OF NEW YORK, INC.; NEXTEL
PARTNERS OF UPSTATE NEW
YORK, INC.; AND SPRINT
COMMUNICATIONS COMPANY, L.P.,

                Defendants.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

APPEARANCES:                           OF COUNSEL:

O'Connell, Aronowitz Law Firm          KEITH J. ROLAND, ESQ.
54 State Street, 9th Floor
Albany, New York 12207-2670
Attorneys for Plaintiff

Mordechai Gross                       MORDECHAI GROSS, ESQ.
Xchange Telecom Corp.
6311 14th Ave., Ste. 215
Brooklyn, New York 11218
Attorney for Plaintiff

Harris Wilshire & Grannis LLP           AMY E. RICHARDSON, ESQ.
1919 M Street NW, Eighth Floor        STEPHEN W. MILLER, ESQ.
Washington, D.C. 20036
Attorneys for Defendants

Armstrong, Teasdale LLP               CHARLES Q. STEESE, ESQ.
4643 South Ulster Street, Ste. 800
Denver, CO 80237
Attorneys for Defendants

Lippes Mathias Wexler Friedman LLP
54 State Street, Ste. 1001
Albany, New York 12207
Attorneys for Defendants

LAWRENCE H. SCHAEFER, ESQ.
THOMAS D. LATIN, ESQ.

## DECISION AND ORDER

### I. Background

Presently pending before the Court is plaintiff XChange Telecom Corp's (hereafter XChange) Motion to Compel responses to Interrogatories. Dkt. No. 101. Defendants Nextel Partners of Upstate New York, Inc.; Nextel of New York, Inc.; Sprint Communications Company L.P.; and Sprint Spectrum, L.P. (hereafter Sprint or defendants) opposed. Dkt. No. 102. XChange filed a reply. Dkt. No. 104. For the reasons that follow, XChange's Motion to Compel is denied.

### II. Motion to Compel

Essentially, XChange seeks to compel defendants to respond to seven interrogatories, numbers 17-21 and 23-24.[1] See Dkt. No. 101-2. XChange contends that Sprint's expert report authored by Dr. Brian Stahir contended, as relevant here, that XChange engaged in certain habits which "meant (according to Dr. Staihr) that there

---

[1] Sprint points out that "The Ronald Declaration also references Interrogatory No. 22. Roland Dec. at 8. However, this is obviously a mistake. Interrogatory No. 22 asks Sprint to describe Dr. Staihr's employment since 1990. It has nothing to do with ICB arrangements. Indeed, the Motion itself does not ask to compel a response to Interrogatory No. 22. He obviously means interrogatory No. 23. From that point forward, Mr. Roland's affidavit is off by one interrogatory." Dkt. No. 102 at 18. XChange does not acknowledge whether it identified interrogatory number 22 in error; however, as its Reply does not address it, the Court will accept Sprint's reasoning and proceed under the understanding that interrogatory number 22 is not in dispute.
   XChange also sought to compel a response to interrogatory number 25. XChange provides in its Reply that Sprint has sufficiently answered the interrogatory, and, thus, interrogatory number 25 is no longer in dispute. Dkt. No. 104 at 9. Thus, the Court will review interrogatories 17-21 and 23-24.

2

was no true 'carrier-customer' relationship":

> (a) XChange provided service to some customers through an Individual Case Basis (ICB) arrangement, wherein prices for certain services differed from tariff prices (pg 18)[;]
> (b) XChange and BTR were parties to a 'Master Services Agreement' (MSA) (pg 12)[;]
> (c) Services provided by XChange to BTR, referenced in the Master Services Agreement, including IP Bandwidth, collocation, and 'DIDs,' are not
> (d) BTR did not pay each bill from XChange in full on a timely basis, and had outstanding account payables to XChange, (pg 20); XChange did not terminate service to BTR when the bills were not timely paid (pg 20,[ ]22) Similar claims were made with respect to another customer, KOL Mevaser (pg 20)[;]
> (e) XChange's determination not to assess late payment charges on BTR (pg 21)[;]
> (f) Certain customers of XChange acted as sales agents to recruit and attract customers for XChange, and received sales commissions for their efforts (pg 24)[;]
> (g) XChange had 'revenue sharing arrangements' with certain of its customers (pg 27, 14)[;]
> (h) XChange's termination of traffic of BTR and other XChange customers, through use of VOIP or other Internet Protocol signaling, automatically means access charges cannot apply.

Dkt. No. 101-2 at 3.[2] XChange contends further that its own expert witness, David Malfara, stated in his expert report that "the complained of arrangements were widespread and commonplace in today's competitive telecommunications market, and do not indicate XChange's customers were not end users." Id. at 4. Thus, XChange asserts that the third set of interrogatories are necessary because it believes that

> Sprint itself (or its affiliates) have engaged in many of the same carrier-customer practices which Dr. Staihr proclaims would not be possible in true carrier-customer relationships.

---

[2] The Court notes that, although XChange attaches Dr. Stahir's expert disclosure to its Motion to Compel, it has provided only the odd-numbered pages of this report. See Dkt. No. 101-4.

3

> . . . If, as XChange expects, Sprint's answers admit Sprint engaged in such practices, that would severely undercut Dr. Staihr's credibility and undermine the validity of his Report.

Dkt. No. 101-2 at 4.

Sprint opposed the motion to compel, arguing (1) the Motion to Compel and interrogatories on which it is based are untimely, (2) the interrogatories are irrelevant to the underlying questions at issue in this action and the counterclaims, and (3) the requests are overbroad and unduly burdensome. See Dkt. No. 102.

### A. Timeliness

### 1. Arguments

XChange contends that its Motion to Compel and third set of interrogatories are timely. Dkt. No. 104. XChange contends that it "believes it started the process to file its motion to compel within 14 days of the discovery deadline, – actually, before the deadline – and has acted with due diligence in good faith." Id. at 10 (citing Dkt. No. 103 (Roland Affidavit) at 2 ¶¶ 6-7). XChange provides that it sent its interrogatories by e-mail on June 8, 2016, which was 30 days before the deadline set for the expiration of discovery – July 8, 2016. Id. XChange provides further that after it received Sprint's response to the interrogatories, dated June 14, 2016, which "refus[ed] to respond to any interrogatories," counsel "immediately wrote the Court asking for a pre-motion conference on June 15 – well within the time limit." Id.; Dkt. No. 90. Although the Court scheduled a conference for June 29 (Dkt. No. 92), XChange withdrew its request on June 23, 2016, as Sprint

4

> agree[d] to respond to the interrogatories by July 11th. In
> that response Sprint may raise both timeliness and non-
> timeliness objections. Sprint will provide answers to the
> questions where there are only timeliness objections.
> XChange retains the right to seek further review from this
> Court, with respect to any Sprint failure to respond, and any
> Sprint objection (including timeliness), upon receipt of
> Sprint's interrogatory responses.

Dkt. No. 93 at 1.

XChange provides that Sprint's July 11 responses did "not provide the information subject to the instant motion to compel." Dkt. No. 104 at 10. XChange indicates that in the days following the receipt of Sprint's July 11 responses, XChange and Sprint had "multiple discussions and correspondence" and e-mail correspondence which were "made pursuant to our duty to confer in good faith to resolve discovery issues." Id. at 10-11. Finally, XChange contends that "due to the last minute flurry of activities; the ongoing preparation for expert witness depositions; and the pressing burden on XChange's counsel of other law office obligations, good cause exists for the motion to be accepted by the Court." Id. at 11; see also Dkt. No. 103 at 2-3 ¶8.

Sprint argues that XChange's interrogatories and its Motion to Compel are untimely, and no good cause is present. Sprint contends that XChange's service of its third set of interrogatories on June 8, 2016 was not timely because it did not permit them sufficient time to respond before the July 8, 2016 expiration of the discovery deadline. Dkt. No. 102 at 7 (citing FED. R. CIV. P. 6(d)). Sprint further asserts that the Motion to Compel is untimely, as it was filed on August 2, 2016. Sprint argues that the last day to timely file the motion to compel was July 22, 2016, which would be two weeks following the expiration of the discovery deadline. See N.D.N.Y. Local Rule

5

7.1(d)(8). Sprint contends that, even if the Court measures the deadline from the time it responded to XChange's third set of interrogatories, July 11, 2016, XChange would have had to file the motion to compel by July 25, 2016. Dkt. No. 102 at 8.

Sprint also argues that XChange has not demonstrated good cause for its belated interrogatories and motion to compel because XChange was aware or should have been aware of its arguments as to why various calling companies were not end users since at least March 26, 2016, when it filed its amended counterclaims asserting these arguments. Dkt. No. 102 at 4.

### B. Assessment

The Court agrees that XChange's third set of interrogatories and Motion to Compel are untimely. Although XChange argues that it served its interrogatories within the discovery deadline, as Sprint points out, it did not serve its third set of interrogatories in a timely manner, as its service of the interrogatories on June 8, 2016 would not give sufficient time for Sprint to file its responses within the discovery deadline. FED. R. CIV. P. 6(d). Although the Court acknowledges that XChange requested a conference on June 15, 2016 and ultimately withdrew that conference request based on an apparent understanding that Sprint would sufficiently respond to the interrogatories, this conference was requested after late service of the third set of interrogatories. Dkt. No. 90, 93. Dkt. No. 97. Further, XChange does not explain why it could not, after receiving the July 11 responses, contact the Court and request a pre-

6

motion conference and, prior to the passing of the July 22, 2016 deadline,[3] request additional time to file a motion to compel. Although the undersigned acknowledges XChange's argument that the parties were meeting and conferring as required prior to filing a motion to compel, XChange did not request a conference again until August 2, 2016.

Although the Court recognizes that XChange's delay is not extremely extensive, when considered in light of the overall status of this case, the eleven-day delay is not insignificant. This action was commenced in January 2014, over three and one-half years ago. See Dkt. No. 1 (Compl). Currently pending before the assigned District Judge are a Motion for Partial Summary Judgment and a Motion for Summary Judgment, both which were filed shortly after XChange filed its motion to compel See Dkt. Nos. 115, 116. These motions may or may not lead to the partial or complete resolution of this matter. Further, many of XChange's requests are burdensome and would likely to take a significant amount of time for Sprint to complete should the Court order Sprint to respond. XChange asserts its belief that many of its requests are not burdensome as they require electronic discovery or a narrative answer. However, interrogatories which demand: (1) the "top 100 retail customers of all Sprint entities (by revenue)," producing lists of "the accounts receivable aging (in months) of all invoiced amounts for each of the past 60 months"; and (2) "each negotiated settlement of accounts due between Sprint or any Sprint affiliate and its customer, since January 1,

---

[3] As discovery closed on July 8, 2016, pursuant to Local Rule 7.1(d)(8), the parties had fourteen days, or until July 22, 2016, to file motions to compel discovery.

7

2010," providing each customer's name and service, the amount billed and "account aging history," the amount accepted in resolution, the amount of interest or late payment fee collected, and "the reason Sprint accepted an amount in settlement other than the amount originally billed," cannot, in good faith, be described as non-burdensome. Dkt. No. 101-3 at 13, 22. These requests undoubtedly would require the Court to delay this litigation even further in order to permit Sprint the time needed to respond.

The undersigned further agrees with Sprint that XChange has failed to demonstrate good cause for the delay. See FED. R. CIV. P.16(b). Despite XChange's arguments otherwise, the Court does not understand why XChange was unaware of its desire to obtain certain information about Sprint's common practices until June 8, 2016, when it served the third set of interrogatories. XChange suggests that it was not aware that such information would be needed until Sprint served Dr. Stahir's interrogatories on May 16, 2016. Even accepting that XChange was blindsided by Dr. Stahir's expert report, knowing the already extended discovery deadline was fast approaching, XChange had the option of serving such interrogatories as close to May 16, 2016 as possible or asking for an extension from the Court. XChange did not make that request. Regardless, the undersigned is not convinced that XChange was unaware of its need for the material contained in the third set of interrogatories until receiving Sprint's expert disclosure because, as Sprint points out, Sprint's amended counterclaims were filed on March 26, 2016. Dkt. No. 83-1. These amended counterclaims detail Sprint's arguments that certain arrangements that XChange has in

8

place with its customers, such as Blog Talk Radio and Dollar Phone, do not comply with tariff requirements. Dkt. No. 82-1 at 41 ¶33-45. To the extent it can be determined, at least some of these are matters raised within Dr. Stahir's expert report are also noted in the amended counterclaims.[4] Thus, XChange was aware of at least some of Dr. Stahir's and Sprint's theories on these topics at the time Sprint served its amended counterclaims.

The undersigned is unwilling to allow further delay, especially as the undersigned is unconvinced that material relating to Sprint's practices are relevant to the underlying merit-based issues remaining in this action. See FED. R. CIV. P. 26(b)(1). XChange indicates it is essential for it to have the interrogatories answered in order to "undermine the credibility of Dr. Stahir and the validity of his testimony." Dkt. No. 101-1 at 3. However, should this matter proceed to trial, XChange will be able to cross-examine Dr. Stahir about common practices in the telecommunication industry and present its own expert witnesses' statements suggesting a contrary opinion.

Accordingly, XChange's motion to compel a response to its third set of interrogatories, Dkt. No. 101, is denied.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff XChange Telecom Corp.'s Motion to Compel (Dkt. No. 101) is **DENIED**; and it is further

---

[4] See footnote 2, supra at 2.

**ORDERED**, that the Clerk of the Court serve this Decision and Order on parties to this action in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 15, 2017
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge